UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

COLLEEN WESTLAKE, *et al.*,

Plaintiffs,

v.

CHRIS MILLER, *et al.*,

Defendants.

Case No. 3:19-cv-00023-MMD-WGC

ORDER REGARDING TEMPORARY RESTRAINING ORDER

**I. SUMMARY**

This is a case concerning the roundup of wild horses. Before the Court is Plaintiff Colleen Westlake and American Wild Horse Preservation Campaign's emergency *ex parte* motion for temporary restraining order ("Motion") (ECF No. 2).[1] For the following reasons, the Court grants Plaintiffs' Motion in part and orders Defendants, particularly Zena Quillan, to refrain from slaughtering or taking to slaughter Plaintiff's horse Lady, who was rounded up on January 4 or 5, 2019 in the Palomino Valley. This order does not address the portion of the motion related to horses other than Lady that were gathered because the Court will require full briefing before issuing a decision about the remaining horses.

**II. BACKGROUND**

Members of the Pyramid Lake Paiute Indian Tribe ("Tribe") and employees of Cattoor Livestock Roundup, Inc., gathered wild horses in the Palomino Valley using

---

[1] While the Motion does not entirely comply with LR 7-4, it is obvious that Plaintiffs seek emergency relief. Given the nature of the case, the Court will consider the Motion on an emergency basis.

motorcycles, ATVs, and men on horseback on January 4, 2019. (ECF No. 2 at 5.) Members of the Tribe returned to the Valley on January 5, 2019, and continued gathering the horses. (*Id.*) Plaintiff Colleen Westlake's horse, Lady, was among the horses gathered. (*Id.*) Plaintiff Westlake purchased Lady from the Nevada Department of Agriculture on July 11, 2018. (ECF No. 2-3 at 2.)

Defendant Chris Miller, acting under color of state law and his authority as an enforcement administrator at the Nevada Department of Agriculture, allegedly cleared the horses—including Lady—for shipment on the morning of January 6, 2019, even though he did not have proof that Lady belonged to the Tribe.[2] (*See* ECF No. 1 at 5-6.) It appears that Plaintiffs name Miller as a defendant in his individual capacity rather than in his official capacity. (*See id.* at 2.)

Plaintiff filed the Complaint on January 16, 2019, asserting the following claims: (1) violation of NRS § 569 *et seq.*; (2) violation of constitutional rights under 42 U.S.C. § 1983; and (3) conspiracy. (ECF No. 1.) Plaintiff seeks declaratory and injunctive relief. (*Id.*)

## III.    LEGAL STANDARD

The Court may issue a temporary restraining order ("TRO") pursuant to Federal Rule of Civil Procedure 65.[3] The standard for issuing a TRO is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Thus, in order to obtain a TRO, a plaintiff must show: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in her favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). "An injunction is a matter of equitable discretion and is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."

---

[2]Plaintiffs further allege that these actions may have been taken by Defendant Miller's superior, Defendant Douglas Farris, who also appears to be named in his individual capacity. (*See* ECF No. 1 at 3.)

[3]The Court finds that the requirements of Rule 65(b)(1) are satisfied.

2

*Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (internal quotation marks omitted).

### IV. FINDINGS AND CONCLUSIONS

In applying the factors required by *Winter*, 555 U.S. at 20, in deciding whether a TRO should issue, the Court finds and concludes as follows.

Plaintiffs have shown serious questions going to the merits of their claim under 42 U.S.C. § 1983 that Lady was rounded up without adequate due process. Due process requires notice and opportunity to be heard before property is taken, *see Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 590 (9th Cir. 1998), and Plaintiffs allege that no notice was given that Lady would be taken. (*See, e.g.*, ECF No. 2 at 7; ECF No. 2-1 at 4 (declaration of Thomas Baker).)

Plaintiffs have demonstrated an immediate threat of irreparable harm if the status quo is not maintained, that is, Lady's potential slaughter. (ECF No. 2 at 3.)

The potential harm to Defendants if a TRO is issued is the temporary suspension of the shipment and/or slaughter of the gathered horses while they identify and remove Lady, but the shipment and/or slaughter may be resumed at a later point. The potential harm to Plaintiffs in the absence of a TRO will be Lady's taking and slaughter without notice. The balance of hardships thus tips sharply in Plaintiffs' favor.

The public interest is served when the Court maintains the status quo to ensure Lady is not unlawfully taken and slaughtered.

This order will issue without notice because time is of the essence—Defendants plan to slaughter or take to slaughter Plaintiff's horse Lady in the immediate future. (*See* ECF No. 2 at 3.)

### V. CONCLUSION

It is therefore ordered that Plaintiffs' motion for temporary restraining order (ECF No. 2) is granted in part pending a hearing on the motion. Defendants, particularly Defendant Zena Quillan, are ordered to refrain from slaughtering or taking to slaughter Plaintiff Westlake's horse Lady.

Plaintiffs are instructed to serve Defendants with a copy of the complaint, summons, motion for temporary restraining order, and this order. Defendants must file their response by January 23, 2019. Plaintiffs must file their reply by January 25, 2019. The Court will hear the motion on January 28, 2019, at a time to be determined.

Plaintiffs will be required to give security in an amount that the Court considers proper under Fed. R. Civ. P. 65(c), to be determined at the hearing.

DATED THIS 17th day of January 2019.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE