UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

COLLEEN WESTLAKE, *et al.*,

    Plaintiffs,

v.

CHRIS MILLER, *et al.*,

    Defendants.

Case No. 3:19-cv-00023-MMD-WGC

ORDER REGARDING MOTION FOR PRELIMINARY INJUNCTION

## I. SUMMARY

This is a case concerning the roundup of wild horses in Palomino Valley. Before the Court is Plaintiff Colleen Westlake and American Wild Horse Preservation Campaign's ("AWHC") motion for preliminary injunctive relief ("Motion") (ECF No. 2). The Court has reviewed the parties' various responses and replies. (ECF Nos. 11, 12, 14, 29, 30.) The Court also heard oral argument on the Motion on January 28, 2019. (ECF No. 32.) For the following reasons, the Court denies the Motion as it relates to horses other than Lady. The Court will defer ruling on the Motion as it relates to Lady pending an evidentiary hearing. Accordingly, the temporary restraining order issued relating to Lady (ECF No. 7) will be extended pending the evidentiary hearing.

## II. FACTUAL BACKGROUND

The following allegations come from the Complaint (ECF No. 1) unless otherwise indicated.

Members of the Pyramid Lake Paiute Indian Tribe ("Tribe") and employees of Cattoor Livestock Roundup, Inc. ("Cattoor") rounded up feral horses that were on privately owned land in Palomino Valley using motorcycles, ATVs, a helicopter, and men on horseback on January 4, 2019. (ECF No. 1 at 4.) The Tribe hired Cattoor to assist with the

roundup. (*Id.*) Members of the Tribe returned to the Valley on January 5, 2019, and continued rounding up horses. (*Id.*)

Among the horses that were gathered was Lady, a horse that Plaintiff Westlake purchased from the Nevada Department of Agriculture ("Department") on July 11, 2018. (*Id.* at 5; ECF No. 2-3 at 2.) Other privately owned horses were also caught in the roundup. (ECF No. 1 at 5.)

During the roundup, Plaintiffs called the sheriff's office to report the roundup, but the sheriff's office instructed Plaintiffs to contact the Department. (*Id.*) The Department then instructed Plaintiffs to contact the sheriff's office. (*Id.*)

A Department employee cleared the horses for shipment on the morning of January 6, 2019, by issuing brand inspection clearance certificates for the horses even though he did not have proof that the horses belonged to the Tribe. (*Id.* at 5-6.) The employee may have been Defendant Doug Farris, an animal industry administrator, or his subordinate, Defendant Chris Miller, an enforcement supervisor, acting under Farris's instruction or authorization. (*Id.* at 4-6.)

Plaintiff Westlake informed the Department on January 7, 2019, that Lady had been caught in the roundup. (*Id.* at 6.) Defendant Farris told Westlake that the Department was inspecting the horses and would notify her if Lady was found. (*Id.* at 7.) Nevertheless, Plaintiffs allege that Lady had already been sold and was being shipped to slaughter. (*Id.*)

Plaintiffs allege that the horses are currently being shipped to a slaughterhouse in Mexico or Canada. (*Id.*)

**III.    PROCEDURAL BACKGROUND**

Plaintiffs filed the Complaint on January 16, 2019, asserting the following claims: (1) violation of NRS § 569 *et seq.*; (2) violation of the right to procedural due process under 42 U.S.C. § 1983; and (3) conspiracy under § 1983. (ECF No. 1 at 9-12.) Plaintiffs seek declaratory and injunctive relief. (*Id.* at 12-17.)

Plaintiffs filed the Motion the same day, seeking eight forms of relief: (1) an injunction prohibiting the Tribe from rounding up any horses that are not on reservation

2

land without first abiding by the provisions of NRS Chapter 569; (2) a mandatory injunction requiring Defendants to return Lady to Plaintiff Westlake; (3) a mandatory injunction requiring Defendants to return all the horses that were gathered to Palomino Valley; (4) a mandatory injunction requiring Defendant Quillan to contact involved horse shippers and cause the horses to be returned to the Tribe or Palomino Valley; (5) a mandatory injunction requiring the Tribe to hold all the horses that were gathered or return them to Palomino Valley; (6) a mandatory injunction requiring the Department to produce the brand inspection clearance certificates; (7) a mandatory injunction requiring Defendants to provide to Plaintiffs' counsel the names of any shipping companies used to transport the horses that were gathered; and (8) an injunction prohibiting the slaughter of the horses that were gathered. (ECF No. 2 at 15-16.)

The Court issued a temporary restraining order ("TRO") ex parte on January 17, 2019, ordering Defendants to refrain from slaughtering or taking to slaughter Plaintiff Westlake's horse Lady. (ECF No. 7 at 1.)

The Court held a hearing ("the Hearing") on the Motion on January 28, 2019, and dismissed the claims against the Tribe, the Department, and Quillan, thereby mooting Plaintiffs' first, fourth, fifth, and sixth requests for relief in the Motion. (ECF No. 32.) The remaining Defendants are Farris, Miller, and Cattoor.

**IV.    LEGAL STANDARD**

A preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22 (citation omitted). The Ninth Circuit has held that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the

///

*Winter* test are also met." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

Relief that "orders a responsibly party to take action" is treated as a mandatory injunction. *Marlyn Nutraceuticals, Inc. v Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (quoting *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996)). A mandatory injunction "goes well beyond simply maintaining the status quo *pendent lite* and is particularly disfavored." *Id.* (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980)). Courts should deny requests for mandatory preliminary injunctions unless the facts and law clearly favor the moving party. *Stanley v. Univ. of S. Cal.,* 13 F.3d 1313, 1320 (9th Cir. 1994) (quoting *Anderson*, 612 F.2d at 1114). "In general, mandatory injunctions are not granted unless extreme or very serious damage will result[,] and are not issued in doubtful cases." *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1160 (9th Cir. 2011) (alteration in original) (quoting *Marlyn*, 571 F.3d at 879).

**V. DISCUSSION**

Plaintiffs have not shown a likelihood of success on the merits of their conspiracy claim. In addition, Plaintiffs have not shown a likelihood of success on the merits of their § 1983 claim as it relates to horses other than Lady. The Court will hold an evidentiary hearing to determine whether Plaintiffs can show a likelihood of success on the merits of their § 1983 claim as it relates to Lady.

**A. Conspiracy Claim**

Plaintiffs have not demonstrated a likelihood of success on the merits of their claim for a conspiracy under § 1983 because Plaintiffs' allegations about the existence of an agreement are conclusory. "To state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989) (citing *Coverdell v. Dep't of Soc. and Health Servs.*, 834 F.2d 758, 769 (9th Cir. 1987)). The plaintiff must show "an agreement or meeting of the minds to violate constitutional rights,"

4

and "[t]o be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (alteration in original) (quoting *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002)). Plaintiffs allege that "Defendants entered into an agreement with the Tribe that the tribe would trespass onto private property[,] round[]-up the feral horses on those properties, and get them onto reservation land. Then the Department through Defendant Miller would issue brand certificates transferring the ownership to the Tribe so the Tribe could sell the horses to Defendant Quillan, which would then allow her to sell them to a slaughterhouse(s)." (ECF No. 1 at 12.) This conclusory allegation is unsupported by any allegations that Defendants even knew each other, much less engaged in communications that would be necessary to establish an agreement as alleged. *See Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989) (citing *Lockary v. Kayfetz*, 587 F. Supp. 631 (D. Cal. 1984)) ("[A]llegations of conspiracy must be supported by material facts, not merely conclusory statements."). Plaintiffs assert in their reply that a conspiracy existed because a Tribal member stated that the roundup would not have happened if notice had been provided (ECF No. 30 at 8), but the implication of that statement is not readily ascertainable. And in any event, the Complaint does not include allegations about this statement. Accordingly, the Court finds that Plaintiffs have not shown a likelihood of success as to their conspiracy claim.

**B.     § 1983 Claim as to Horses Other than Lady**

Plaintiffs have not demonstrated a likelihood of success on the merits on their § 1983 claim as it relates to horses other than Lady. Plaintiffs asserted at the Hearing that certain Nevada statutes give them protected property interests in notice of roundups, the sale of feral horses, and the feral horses themselves, but the Court disagrees because the relevant statutes do not give Plaintiffs legitimate claims of entitlement.

"The Due Process Clause forbids the governmental deprivation of substantive rights without constitutionally adequate procedure." *Shanks v. Dressel*, 540 F.3d 1082,

5

1090-91 (9th Cir. 2008) (citation omitted). "Not every procedural requirement ordained by state law, however, creates a substantive property interest entitled to constitutional protection." *Id.* at 1091 (citations omitted). "Rather, only those 'rules or understandings' that support legitimate claims of entitlement give rise to protected property interests." *Id.* (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

A state statute creates a constitutionally protected property interest only when it "compels a result 'upon compliance with certain criteria, none of which involve the exercise of discretion by the reviewing body.'" *Id.* (quoting *Thornton v. City of St. Helens*, 425 F.3d 1158, 11640-65 (9th Cir. 2005)). Thus, specific, mandatory, and carefully circumscribed requirements can constrain discretion enough to give rise to a property interest. *Id.* (citing *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998)). "Conversely, 'a statute that grants the reviewing body unfettered discretion . . . does not create a property right.'" *Id.* (quoting *Thornton*, 425 F.3d at 1164).

In *Shanks*, for example, the plaintiffs argued that they were deprived of procedural due process when they did not receive notice and an opportunity to be heard before the city of Spokane issued a building permit to the defendants. *Id.* at 1089. The plaintiffs claimed a constitutionally protected property interest in the denial of the building permit based on the city's failure to comply with its own process for issuing building permits. *Id.* The court found that the plaintiffs did not have a legitimate claim of entitlement to the denial of the permit because the code did not impose particularized standards that significantly constrained Spokane's discretion to issue the permits in question. *Id.* In fact, the commission responsible for issuing the permits had "the freedom to negotiate 'different management standards' for any particular piece of property" and the director of planning services was allowed to apply "'other factors of public interest'" in an unspecified way." *Id.* Having determined that the plaintiffs did not have a substantive property interest in the outcome of the procedure, the court also determined that the plaintiffs were "not constitutionally entitled to insist on compliance with the procedure itself." *Id.* The court reasoned that "[t]o hold otherwise would immediately incorporate virtually every regulation

6

into the Constitution." *Id.* (quoting *Clemente v. United States*, 766 F.2d 1358, 1364 (9th Cir. 1985)).

Plaintiffs primarily asserted at the Hearing that they have a legitimate claim of entitlement to sales of feral horses based on NRS §§ 565.090, 100, 130, and 150; NRS §§ 569.040, 075, 080, 100, and 110; NRS § 561.148; and NRS § 501.100. Of these statutes, only NRS §§ 569.075 and 080 relate to the sale of feral livestock. But neither actually requires the Department to sell feral livestock. NRS § 569.075 gives the Department the option to sell, stating that the Department "may sell all feral livestock which it has gathered." NRS § 569.080 also merely gives the Department the option to sell, requiring the Department to sell, hold, or place unclaimed estrays. Because neither of these statutes compels the Department to sell feral livestock, Plaintiffs lack a legitimate claim of entitlement to such a sale.

Plaintiffs further argue that they have a legitimate claim of entitlement to the feral horses themselves based on NRS § 501.100, which provides that "[w]ildlife in this State not domesticated and in its natural habitat is part of the natural resources belonging to the people of the State of Nevada." The Court finds this argument unpersuasive because NRS § 501.100 is expressly designated a "legislative declaration"—not a guarantee of substantive property rights.

Plaintiffs also seem to argue that they have a protected property interest in the notice of sale prescribed by NRS § 569.075. While NRS § 569.075 requires the Department to publish notice of the sale of feral livestock, it does not actually require a sale to take place. *See id.* ("The Department may sell all feral livestock which it has gathered . . . ."). In addition, Plaintiffs allege that the Tribe—not the Department—entered into a contract for sale of the horses. (ECF No. 1 at 5.) Finally, given that Plaintiffs have no substantive property interest in the outcome of the procedures prescribed by the statutes they reference, they are "not constitutionally entitled to insist on compliance with the procedure itself." *Shanks*, 540 F.3d at 1091.

///

Plaintiffs have not shown a likelihood of success on the merits of the claims that give this Court federal question jurisdiction, at least as they relate to horses other than Lady. Accordingly, the Court will deny the Motion as it relates to those horses.

### C. § 1983 Claim as to Lady

Plaintiff Westlake may be able to demonstrate likelihood of success on the merits of the § 1983 procedural due process claim as it relates to Lady. To obtain relief on a procedural due process claim, the plaintiff must establish the existence of "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

Plaintiffs allege that Plaintiff Westlake has a property interest in Lady and that Defendants Farris or Miller authorized Lady to be removed from privately owned land without notice and an opportunity to be heard. (ECF No. 1 at 5-6.) The Court assumes without deciding as this preliminary stage that Westlake's property interest in Lady is protected by the Constitution as opposed to state tort law. *See Daniels v. Williams*, 474 U.S. 327, 332 (1986) ("Our Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society."). Nevertheless, there is insufficient evidence in the record to determine whether Defendants Farris or Miller actually issued a brand inspection clearance certificate for Lady. The parties stated at the Hearing that no one actually knows where Lady is presently located, and there is dispute about whether Lady was actually rounded up. In addition, none of the declarations that Plaintiffs submitted show that Lady in particular was rounded up. (*See* ECF Nos. 2-1 (declaration of Thomas Baker); 2-3 (declaration of Colleen Westlake); 30-1 (declarations of Palomino Valley residents).) Accordingly, the Court will hold an evidentiary hearing to determine, among other things, whether Defendants Farris or Miller actually issued a brand inspection clearance certificate for Lady.

///

Defendants Farris and Miller argued at the Hearing that the Court lacks subject matter jurisdiction because the Complaint names Farris and Miller in their official capacities rather than their individual capacities. Plaintiffs asserted that Farris and Miller are named in both their official capacities and individual capacities. To the extent that Plaintiffs name Farris and Miller in their official capacities, they are immune from suit. *Eaglesmith v. Ward*, 73 F.3d 857, 859 (9th Cir. 1995), *as amended* (Jan. 23, 1996). However, "a section 1983 suit against state actors necessarily implies a suit against the defendants in their personal capacities." *Cerrato v. S.F. Cmty. Coll. Dist.*, 26 F.3d 968, 973 (9th Cir. 1994) (citing *Price v. Akaka*, 928 F.2d 824, 828 (9th Cir. 1990)). Accordingly, the Court finds that Defendants have been named in their individual capacities.

Plaintiffs also allege that Defendant Cattoor functioned as a state actor when it allegedly rounded up Lady (*see* ECF No. 1 at 4), but the Court disagrees. At the Hearing, Plaintiffs' counsel argued that Cattoor is a state actor under the public function test described in *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003). Under that test, private entities are considered to be state actors if they have been "endowed by the State with powers or functions governmental in nature." *Id.* at 1093. According to Plaintiffs' counsel, Cattoor was endowed with governmental powers or functions when it rounded up the horses and sold them. But NRS § 569.045 suggests that anyone—not just the Department—may round up horses. *See* NRS § 569.045(1) (emphasis added) ("Before *any person* gathers any estrays or feral livestock, the person must cause notice of the gathering to be published in a newspaper of general circulation within the county in which the gathering is to take place."). Further, Plaintiffs allege that the Tribe—not Cattoor—sold the horses. (*See* ECF No. 1 at 5.) Accordingly, the Court finds that Plaintiff Westlake cannot demonstrate likelihood of success on the merits of her § 1983 against Cattoor.

**VI. CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion.

It is therefore ordered that Plaintiff's Motion (ECF No. 2) is denied as it relates to horses other than Lady. The Court defers ruling on the remainder of the Motion.

The Court will schedule an evidentiary hearing to determine whether Plaintiffs can demonstrate a likelihood of success on the merits of their § 1983 claim as it relates to Lady. The TRO issued on January 17, 2019, remains in place until the evidentiary hearing concludes because Plaintiff Westlake continues to face a risk of irreparable harm and because prohibiting Defendants from slaughtering Lady will not impose significant hardship. Accordingly, Defendants remain prohibited from slaughtering or taking to slaughter Plaintiff Westlake's horse Lady.

The parties should be prepared to address the following issues at the evidentiary hearing: (1) whether there is any evidence that Lady was actually rounded up and taken from Palomino Valley or any evidence that Lady is actually still in Palomino Valley; (2) whether there is any evidence Defendants Farris or Miller acted intentionally in issuing a brand inspection clearance certificate for Lady; and (3) security under Fed. R. Civ. P. 65(c).

DATED THIS 31st day of January 2019.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE